# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

Christine Davis, Anna Macias and
Leonardo Macias, individually and
on behalf of a class of similarly
situated individuals,

Case No.: 8:17 cv 2431 T 13 AAS

        Plaintiffs,

**CLASS ACTION COMPLAINT**

    v.

GENERAL MOTORS LLC, a
Delaware limited liability company,

**JURY TRIAL DEMANDED**

        Defendant.

FILED
2017 OCT 16  AM 11: 53
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FL
TAMPA FLORIDA

TRA - 464 15
$400

## INTRODUCTION

1.   Plaintiffs Christine Davis, Anna Macias and Leonardo Macias
("Plaintiffs") bring this action for themselves and on behalf of all persons in
the United States who purchased or leased any 2010-2015 Cadillac SRX
(collectively, "Cadillac Vehicles" or "Class Vehicles") designed,
manufactured, marketed, distributed, sold, warranted, and serviced by General
Motors LLC, a Delaware limited liability company ("GM" or "Defendant").

2.   This case arises out of a defect in the Class Vehicles' headlights that
causes the headlights to abnormally and prematurely wear-out and fail.

3.   Specifically, on information and belief, the seals GM used in Class
Vehicles' headlights' exterior housing units wear-out or deteriorate, allowing
moisture to accumulate and condense from the air that flows through their
vents. The housing units' vents are also defective in that they further
compromise the flow and exchange of air through the improperly sealed
headlights. The pooling condensation causes the headlights to malfunction
and/or the bulbs to fail, by corroding lamp assembly components like the
igniter and/or causing electrical shorts, among other problems (the "Headlight
Defect").

4.   In June 2012, the New York Times published an article regarding an

investigation by the National Highway Traffic Safety Administration

("NHTSA") into complaints about low-beam headlight failures in almost

250,000 2007-2009 Saturn Outlooks and GMC Acadias.[1] "According to a

bulletin from General Motors," the newspaper reported, "the problem, which

only affects vehicles with halogen headlights, may also exist in about 93,000

more vehicles, including models from 2010 as well as the 2008-10 Cadillac

CTS and 2010 Cadillac SRX."

5.   As a result of the Headlight Defect, the Class Vehicles present a safety

hazard and are unreasonably dangerous to consumers. As it progresses, the

Headlight Defect can result in very dim light output or no light at all. Such

malfunctions will necessarily result in low visibility at best, which can

contribute to injurious, or even fatal, traffic accidents. Hundreds of Class

Members have complained to NHTSA and in informal forums online, some of

which Defendant or its agents monitor, about the Headlight Defect and

associated safety concerns.[2] For example, Auto Recalls for Consumers

---

[1] Christopher Jensen, "Government Considers Investigating G.M. Crossovers for Headlight Failures," The New York Times (June 29, 2012 at 10:52am), https://wheels.blogs.nytimes.com/2012/06/29/government-considersinvestigating-g-m-crossovers-for-headlight-failures/?mcubz=0.

[2] For example, threads posted by consumers on an online forum called CadillacOwners.com includes responses by Cadillac Customer Service Representatives. *See. e.g.,* "Headlight Condensation," posted by Cataract regarding his 2007 STS-V and initiated on June 11, 2010.

(ARFC) is a website that re-publishes NHTSA complaints. The site included a

complaint by the owner of a 2010 SRX, originally published on June 7, 2011,

regarding problems with the car's headlights:

> THE CONTACT OWNS A 2010 CADILLAC SRX. THE
> CONTACT WAS DRIVING APPROXIMATELY 60
> MPH WITH THE LOW BEAM HEADLIGHTS IN
> ACTIVATION HOWEVER, THEY EXHIBITED
> EXTREMELY POOR LIGHTING. THE HEADLIGHTS
> FAILED TO ILLUMINATE THE ENTIRE ROAD. THE
> VEHICLE WAS TAKEN TO AN AUTHORIZED
> DEALER WHERE THEY DID NOT HAVE THE
> PROPER EQUIPMENT TO PERFORM A DIAGNOSIS
> ON THE HEADLIGHTS. THE VEHICLE WAS NOT
> REPAIRED. THE MANUFACTURER WAS MADE
> AWARE OF THE PROBLEM. THE APPROXIMATE
> FAILURE MILEAGE WAS 100.[3]

6. Another more recent complaint, posted on November 11, 2016 at

CarProblemZoo.com, exemplifies not only the persistence of the problems, but

also the risk associated with them: "The headlights on the 2010 Srx fill with

moisture decreasing the light and make it unsafe to operate the vehicle at night

without using high beams. This problem has caused repeated stop by police to

---

available at http://www.cadillacforums.com/forums/cadillac-sts-v-series-forum/202351-
headlight-condensation.html (last visited Sept. 15, 2017).

[3] The incident occurred in Palestine, TX, and was posted on June 7, 2011,
*available at* http://www.arfc.org/complaints/2010/cadillac/srx/10405415.aspx
(last visited Sept. 15, 2017).

warn of low visibility with the affected headlights."[4]

7.   Since 2011, in an effort to address owner complaints regarding the

Headlight Defect, GM has issued a Customer Satisfaction Program and several

Technical Service Bulletins ("TSBs"), as detailed below.  However, these

efforts have been entirely inadequate in resolving the Headlight Defect or

providing relief, or even in alerting that vast majority of Class Vehicles owners

that their Class Vehicles have a dangerous defect that needs repair.

8.   In fact, rather than redesigning the defective components and installing

non-defective components, GM purports to "repair" the Class Vehicles by

simply replacing defective components with the same defective components.

Further, Class Vehicle owners incur out-of-pocket costs for these repairs

because GM refuses to extend the warranty to cover them or issue a recall to

prevent them.  GM thus unfairly shifts the costs to the Class Members, and

benefits from the revenue generated by repeat repairs.  Accordingly,

consumers will be required to pay hundreds, if not thousands, of dollars to

repair or replace the headlights and related components as a result of the

Headlight Defect, and GM is unjustly enriched at their expense.

---

[4] "Headlight problems of the 2010 Cadillac SRX: Failure Date: 11/09/2016," available at http://www.carproblemzoo.com/cadillac/srx/headlights-problems2.php (last visited Sep. 15, 2017).

9.   On information and belief, all the Class Vehicles are equipped with the same or substantially identical headlight assemblies, and the Headlight Defect is the same for all Class Vehicles.

10. Beginning as early as 2010, through consumer complaints and dealership repair orders, among other internal sources, Defendant knew or should have known of the Headlight Defect in the Class Vehicles that adversely affects the drivability of the Class Vehicles and causes safety hazards.  Nevertheless, Defendant has actively concealed and failed to disclose this defect to Plaintiffs and Class Members prior to the time of purchase or lease and thereafter.

11. On information and belief, Defendant's corporate officers, directors, or managers knew about the Headlight Defect and failed to disclose it to Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter.

12. Because GM will not notify Class Members that the headlights are defective, Plaintiffs and Class Members (as well as members of the general public) remain subject to symptoms that create dangerous and unexpected driving hazards.

13. The alleged Headlight Defect is inherent and was present in all the Class Vehicles at the time of sale.

14. GM knew about the Headlight Defect, along with its attendant dangerous safety implications, and GM concealed its knowledge from Plaintiffs and Class Members at the time of sale, lease, repair, and thereafter. In fact, instead of repairing the defects in the defective headlights, GM either refused to acknowledge the existence of the Headlight Defect, or performed repairs that simply masked its effects.

15. If they had known about the Headlight Defect at the time of sale or lease, Plaintiffs and Class Members would have paid less for the Class Vehicles or would not have purchased or leased them at all.

16. As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including expenses for headlight-related repairs. Additionally, as a result of the Headlight Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight components are substantially certain to fail before their expected useful lives have run.

## THE PARTIES

### Plaintiff Christine Davis

17. Plaintiff Christine Davis is a Florida citizen who resides in

Lakeland, Florida.

18. In or around August, 2016, Ms. Davis purchased a Certified Pre-Owned 2015 Cadillac SRX from Ed Morse Cadillac, an authorized Cadillac dealer in Tampa, FL.

19. Prior to purchasing her Cadillac vehicle, Ms. Davis saw television commercials, magazine advertisements, magazine reviews, reviewed the windshield "Monroney" sticker, and test drove the vehicle with a dealership employee during the daytime.

20. Ms. Davis' Cadillac vehicle has and continues to exhibit the Headlight Defect described herein and she has suffered a loss as a result of the Headlight Defect.

21. Specifically, in February 2017, Ms. Davis noticed that her headlights were dim. She noticed condensation in the headlights and that the lenses looked gray. At her request, her husband removed the headlights from the car, cleaned them off, and then reinstalled them. This seemed to alleviate the problem initially, so she continued to use the vehicle. However, the headlights again began to dim shortly thereafter.

22. She then took the car to Cannon Cadillac in Lakeland, FL to have the headlights fixed. Shortly after the service she received at Cannon

Cadillac, the problem reemerged and her headlights again became dim.

23. Ms. Davis' Cadillac SRX headlights continue to malfunction and she fears they can fail completely at any time without warning.

24. Ms. Davis purchased her vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

25. Had GM disclosed its knowledge of the Headlight Defect before she purchased her vehicle, Ms. Davis would have seen or heard such disclosures and been aware of them.  Indeed, GM's omissions were material to Ms. Davis.  Like all members of the Class, she would not have purchased her Class Vehicle, or would have paid less for it, had she known of the Headlight Defect.

26. At all times, Ms. Davis, like all Class Members, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiffs Anne and Leonardo Macias**

27. Plaintiffs Anne Macias and Leonardo Macias, married individuals, (together with Christine Davis, "Plaintiffs") are Florida citizens who reside in Port St. Lucie, Florida.

28. In October, 2014, Anne and Leonardo Macias purchased a pre-owned 2011 Cadillac SRX from CarMax in Boynton Beach, FL.

29. Prior to purchasing their Cadillac vehicle, Anne and Leonardo Macias saw television commercials, magazine advertisements, magazine reviews, reviewed the windshield "Monroney" sticker, and they each test drove the vehicle during the daytime.

30. Three to four months after purchasing their vehicle, Anne and Leonardo Macias noticed that their Cadillac vehicle's headlights ceased functioning properly. As a result, they ceased driving at night unless absolutely necessary. Their vehicle has and continues to exhibit the Headlight Defect described herein and they have suffered a loss as a result of the Headlight Defect.

31. Mr. and Mrs. Macias have had several near collisions as a result of the Headlight Defect. On one occasion, they were driving their Cadillac when a car pulling out of a parking lot nearly hit them. They pulled off into a parking lot and saw that their headlights were not emitting any light. They were forced to then drive home with their headlights in the "bright" mode, which did allow the headlights to emit light.

32. Sometime between May and July 2015, Mrs. Macias phoned Linus

Cadillac in Vero Beach, FL to complain about the headlights and to find a solution. Yvonne of Linus Cadillac told her that the car would need an entire headlight assembly replacement and that it would cost around $1500.

33. Mrs. Macias then telephoned the Cadillac USA division of GM to complain about her headlights and find a solution. She telephoned on three separate occasions and spoke to a different Cadillac representative each time. On one such occasion, the Cadillac representative she spoke with suggested that she search online for a genuine Cadillac headlight assembly to use as a replacement because the cost might be less than the $1500 she was quoted by Linus Cadillac.  The Cadillac representative gave her the headlight's genuine parts factory numbers, which allowed her to locate and purchase new genuine Cadillac headlight assemblies online. They were equally as deficient as their original assemblies, so Mr. and Mrs. Macias removed them and reinstalled the original headlight assemblies.

34. In early 2016, Mr. and Mrs. Macias then purchased and applied a headlight restoration kit, which purported to clean the exterior of the lenses themselves. This had no effect on the amount of light being emitted from the Cadillac headlights.

35. In 2017, Mr. and Mrs. Macias purchased new headlight bulbs from Bennet Auto Supply in an effort to correct the Headlight Defect. The new bulbs had no effect on the amount of light being emitted from the Cadillac headlights.

36. Plaintiffs continue to experience the Headlight Defect with their Cadillac SRX headlights and they fear they can fail at any time without warning.

37. In August 2017, Mr. and Mrs. Macias received a written estimate from Wallace Cadillac to replace both headlight assemblies for $1373.17, and a written estimate from Linus Cadillac to replace both headlight assemblies for $1,270.00 "+ tax/shop supplies."

38. Mr. and Mrs. Macias purchased their vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

39. Had GM disclosed its knowledge of the Headlight Defect before they purchased their vehicle, Mr. and Mrs. Macias would have seen or heard such disclosures and been aware of them.  Indeed, GM's omissions were material to Mr. and Mrs. Macias.  Like all members of the Class, they would not have purchased their Class Vehicle, or would have paid less for

it, had they known of the Headlight Defect.

40. At all times, Mr. and Mrs. Macias, like all Class Members, have driven their vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

41. Defendant General Motors LLC is a Delaware limited liability company with its principle place of business located at 300 Renaissance Center, Detroit, Michigan. General Motors LLC is registered to do business in the State of Florida. The sole member and owner of General Motors LLC is General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principle place of business in the State of Michigan. General Motors Holdings LLC's only member is General Motors Company, a Delaware corporation with its principal place of business in the State of Michigan. General Motors Company has 100% ownership interest in General Motors Holdings LLC.

42. General Motors LLC, itself and through its affiliates, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in Florida. General Motors LLC is the warrantor and distributor of the Class Vehicles in

the United States.

43. At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in Florida, including in Tampa, and throughout the United States of America.

## JURISDICTION

44. This is a class action.

45. Plaintiffs and other members of the proposed Class are citizens of states different from Defendant's states of citizenship.

46. On information and belief, the number of members of the proposed Class exceeds one hundred and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

47. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d).

## VENUE

48. GM, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(c)-(d).

49. In addition, a substantial part of the events or omissions giving rise to

these claims took place in this district.  Plaintiff Davis purchased her 2015

Cadillac SRX, which is the subject of this action, from Ed Morse Cadillac, an

authorized Cadillac dealer in Tampa, FL. Venue is proper in this Court

pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

50.  Since 2010, GM has designed, manufactured, distributed, sold, and

leased the Class Vehicles. GM has sold, directly or indirectly, through dealers

and other retail outlets, thousands of Class Vehicles equipped with the

Headlight Defect in Florida and nationwide.

51.  Plaintiffs are informed and believe, and based thereon allege, that the

seals in the Class Vehicles' headlight assemblies wear-out or deteriorate

unexpectedly and prematurely, allowing moisture to accumulate and damage

the assemblies' internal components. Plaintiffs are also informed and believe,

and thereon allege, that the vents that allow air flow to maintain pressure and

prevent the lenses from cracking increase the tendency for water to accumulate

and condense in the housing units. These defects result in damage to assembly

components, such as corroding igniters and burnt-out bulbs.

52.  The Class Vehicles are unreasonably dangerous to consumers because

the Headlight Defect prevents their safe operation. For example, as the

14

Headlight Defect progresses, the excessive accumulation of water or condensation can damage crucial components – like the igniter and the bulb - resulting in diminished light output or catastrophic failure. Malfunctioning or inoperative headlights impair drivers' ability to operate the vehicles safely and contribute to accidents, particularly after dusk, before dawn, or in inclement weather by decreasing drivers' visibility and making the Class Vehicles themselves more difficult for other drivers or pedestrians to see.

53. The alleged Headlight Defect is inherent in all Class Vehicles and the Headlight Defect is the same for all Class Vehicles.

54. Since at least 2010, GM has been aware of the defective nature of the headlights, but has failed to disclose it to consumers. As a result of this failure, Plaintiffs and Class Members have been damaged.

**I.     The Headlight Defect Poses an Unreasonable Safety Hazard**

55. As discussed above, the Headlight Defect impairs or prevents putative Class Members from driving the Class Vehicles safely. Hazards include very dim light output that diminishes visibility or catastrophic failures that effectively preclude visibility. Driving with poor visibility due to such conditions presents danger to putative Class Members, other drivers, and pedestrians by significantly increasing the risk of collisions. No consumer

expects to purchase or lease a vehicle that may be non-operational at before dawn, after dusk, or in inclement weather.   The safety risk imposed by the Headlight Defect is objectively unreasonable.

56. Many purchasers and lessees of the Class Vehicles have experienced problems with the headlights.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online demonstrate that the defect is widespread, dangerous, and manifests without warning.  The complaints also indicate Defendant's awareness of the Headlight Defect and of the attendant hazards it creates for consumers and the general public.  The following are a selection of safety complaints, among the hundreds filed with NHTSA, relating to the Headlight Defect, its persistence, and its associated risks (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (June 8, 2017).

**2010 Cadillac SRX**

a. June 7, 2011 TL* THE CONTACT OWNS A 2010 CADILLAC SRX. THE CONTACT WAS DRIVING APPROXIMATELY 60 MPH WITH THE LOW BEAM HEADLIGHTS IN ACTIVATION HOWEVER, THEY EXHIBITED EXTREMELY POOR LIGHTING. THE HEADLIGHTS FAILED TO ILLUMINATE THE ENTIRE ROAD. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY DID NOT HAVE THE PROPER EQUIPMENT TO PERFORM A DIAGNOSIS ON THE HEADLIGHTS. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 100.

b. January 7, 2012 THE LOW BEAMS ON THE CAR ARE VERY POOR, EVEN ON A CLEAR NIGHT. IF DRIVING IN THE RAIN IT IS MUCH WORSE. *TR

c. March 25, 2013 PASSENGER SIDE HEAD LIGHT HAS ONGOING ELECTRICAL SHORT GOES OUT INDICATES ON THE INFORMATION CENTER THEN WILL RANDOMLY COME BACK ON TOOK IT IN TO THE DEALER NO FIX....*TR

d. October 29, 2014 BOTH HEADLIGHTS QUIT WORKING HIGH BEAMS AND LOW BEAMS. STARTED VEHICLE AT NIGHT AND THE VEHICLE DID NOT HAVE ANY HEADLIGHTS. *TR

e. November 6, 2014 PASSENGER HEADLIGHT (SEALED BEAM) FAILED TO TURN ON 2 DAYS AGO. I ASSUMED IT WAS A BULB BUT THE DEALER IDENTIFIED IT AS A SHORT DUE TO WATER AND CONDENSATION ACCUMULATION INSIDE THE HOUSING. THE LIGHT DID COME BACK ON FOR A SHORT TIME WHILE DRIVING TO THE DEALERSHIP, BUT WAS OFF AGAIN UPON ARRIVAL. DEALER STATED THE OTHER LIGHT WOULD BE AFFECTED SOON AS WELL, BASED ON WATER INSIDE IT TOO. I HAVE THE HIGHEST LEVEL EXTENDED WARRANTY PLAN (GM MAJOR GUARD), BUT THE SEALED BEAM HEADLIGHTS ARE EXCLUDED FROM THIS PLAN. DEALER QUOTED COST OF $1,800 PER LIGHT, TOTAL OF $3,600 TO REPAIR. THIS IS A DESIGN FLAW, BASED ON NUMEROUS CADILLAC COMPLAINTS AS WELL AS NOTES FOUND ON NHTSA. IN ITS CURRENT STATE, THE VEHICLE IS NOT DRIVABLE IN LOW VISIBILITY CONDITIONS OR AT NIGHT BECAUSE THE HEADLIGHTS HAVE FAILED DUE TO A DESIGN FLAW. DEALER WILL NOT REPAIR UNDER WARRANTY, AND WITHOUT REPAIR THE VEHICLE WILL NOT EVEN PASS A STATE SAFETY INSPECTION. THIS IS A RECALL WORTHY FAULT WHICH COULD LEAD TO LOSS OF LIFE IF FAULT OCCURS IN LOW VISIBILITY OR NIGHT DRIVING, AND RENDERS THE VEHICLE UNSAFE AS IT WILL NOT PASS STATE SAFETY INSPECTION. PLEASE FORCE GM TO ISSUE RECALL ON THIS ISSUE. I AM CURRENTLY TRYING TO FIGURE OUT HOW TO PAY ALMOST $4,000 ON MY $56K VEHICLE TO GET IT DRIVABLE AGAIN, WHEN IT'S UNDER THE PREMIERE WARRANTY PLAN. THIS POLICY IS UNSATISFACTORY AT BEST. *TR

f. December 1, 2014 I OWN A 2010 CADILLAC SRX. THE

PASSENGER HEADLAMP HAS ACCUMULATED SOME CONDENSATION. AS I WAS READING ONLINE THIS IS A KNOWN FLAW OF DESIGN FOR THIS MODEL (EVEN 2013 MODELS) THAT GM IS AWARE OF. AS THE HOLIDAY APPROACHED WE TRAVELED OUT OF TOWN. AS WERE WERE LEAVING I WAS TOLD BY A FAMILY MEMBER THAT MIGHT PASSENGER HEADLAMP WAS INOPERABLE. SO MY GUESS WAS THAT IT WAS EITHER A SAFETY MECHANISM THAT THE CAR WILL SHUT THE LIGHT OUT TO PREVENT A SHORT OR WORST A FIRE. WELL IT WAS COMPLETE OPPOSITE. THIS MORNING MY LOCAL CADILLAC DEALERSHIP HAS CONCLUDED THE THE KNOWN FLAW IN THE HEADLAMP ACTUALLY SHORTED OUT MY BULD. NOW I HAVE RECEIVED A QUOTE FOR OVER $1000++ TO REPLACE A FLAW IN THEIR DESIGN. HOW IS THIS GOOD BUSINESS? IF IT IS A KNOWN ISSUE TAKE CARE OF IT RIGHT? THIS IS A DESIGN FLAW BASED ON NUMEROUS CADILLAC COMPLAINTS AS WELL AS NOTES FOUND ON THIS VERY NHTSA WEBSITE. IN IT'S CURRENT STATE, THE VEHICLE IS NOT DRIVABLE IN LOW VISIBILITY CONDITIONS OR AT NIGHT BECAUSE THE HEADLIGHTS HAVE FAILED DUE TO A DESIGN FLAW. DEALER WILL NOT REPAIR UNDER EXTENDED WARRANTY AND WITHOUT REPAIR THE VEHICLE WILL NOT EVEN PASS A STATE SAFETY INSPECTION. THIS IS A RECALL WORTHY FAULT WHICH COULD LEAD TO LOSS OF LIFE IF FAULT OCCURS IN LOW VISIBILITY OR NIGHT DRIVING, AND RENDERS THE VEHICLE UNSAFE AS IT WILL NOT PASS STATE SAFETY INSPECTION. PLEASE FORCE GM TO ISSUE RECALL ON THIS ISSUE. *JS

g. December 1, 2014 THE RIGHT EXTERIOR LOW BEAM LIGHT WAS OUT AND THE HOUSING UNIT WAS FULL OF EXCESSIVE MOISTURE. ON SEPTEMBER 2, 2014; BULB REPLACED; LIGHT OUT AGAIN BY THE END OF THE MONTH FOR A WEEK THEN ALL OF A SUDDEN BACK ON AGAIN; THEN OUT AGAIN AND ON AGAIN; ESTIMATED COST OF PARTS WERE $1,459 PLUS TAX AND S.S. NOW ONLY THE RUNNING LIGHTS ON THE LEFT AND RIGHT SIDE ARE WORKING. NOW TRY 1,459 PLUS TAX AND S.S. TIMES 2. THIS IS A DESIGN FLAW. WHY SO MUCH MOISTURE AN ELECTRICAL LIGHTENING UNIT? THE LEFT SIDE DOES NOT HAVE A LOT OF MOISTURE AND THE LIGHT IS NO LONGER WORKING. NOTHING MORE UPSETTING THAN BEING AWAY FROM HOME, ITS DARK AND YOUR VEHICLE

HEADLIGHTS WILL NOT COME ON. *JS

h. December 10,2014 LEFT LOW BEAM LIGHT WARNING CAME ON, TOOK IT TO SHOP TO CHANGE BULB, MECHANIC HAS CHANGED THE BULB, CHANGED THE BALLAST AND IT STILL DOESNT WORK, WHATS THE PROBLEM WITH THE LEFT LIGHT NOT WORKING? *TR

i. December 30, 2014 THERE WAS AN ERROR MESSAGE IN MY DISPLAY TO CHECK PASSENGER LOW BEAM. I HAD THE PASSENGER HEADLAMP REPLACED AT A CADILLAC DEALERSHIP AT A COST OF $369.00. I LEFT THE DEALERSHIP AND DROVE TO MY DESTINATION DURING THE DAYLIGHT HOURS. WHEN I LEFT MY DESTINATION IT HAD GOTTEN DARK AND WHILE DRIVING THE HEADLAMP STOPPED WORKING. I HAVE SINCE FOUND OUT THAT THE SEAL ON THE HEADLAMP IS NO GOOD THEREFORE ALLOWING MOISTURE TO DEVELOP INSIDE THE HEADLAMP WHICH CAUSES THE PROBLEM. I HAVE FOUND THROUGH RESEARCH THAT THIS APPEARS TO BE A DESIGN FLAW WITH THIS MODEL AND MANY PEOPLE HAVE HAD LOSS OF HEADLIGHTS AT TIMES WHEN IT WOULD POSE A SAFETY ISSUE. THE REPAIR IS VERY COSTLY (APPROXIMATELY $1400 PER HEADLAMP). THERE IS MOISTURE IN THE DRIVERS SIDE HEADLAMP AS WELL SO IT STANDS TO REASON THAT IT IS JUST A MATTER OF TIME BEFORE THAT LAMP STOPS WORKING. I ONLY HAVE 73,000 MILES ON THE CAR AND WITHOUT SPENDING $3000 TO RECTIFY THE PROBLEM, I COULD FIND MYSELF WITH NO LIGHTS WHILE DRIVING AT NIGHT. THIS IS IN MY OPINION MOST DEFINITELY A POTENTIAL SAFETY ISSUE! *JS

j. January 21, 2015 THE HEAD LIGHT LENS LEAK AT THE SEAM. BOTH HEAD LIGHTS ARE EFFECTED. MOISTURE ACCUMULATES INSIDE THE LENS AND DISTORTS THE HEAD LIGHT BEAM. THIS REDUCES THE CLARITY AND EFFECTIVENESS OF THE HEAD LIGHTS. I HAVE REPLACED ONE HEADLIGHT AT 45,000 MILES. THE HEAD LIGHT SEAL LEAKS WATER. POOR MANUFACTURING AND A SAFETY CONCERN. THERE SHOULD BE A RECALL. *TR

**2011 Cadillac SRX**

k. February 15, 2012 TL* THE CONTACT OWNS A 2011 CADILLAC SRX. WHILE DRIVING APPROXIMATELY 45 MPH WITH THE HEADLIGHTS ACTIVATED, THE AMBER ILLUMINATION BECAME EXTREMELY DIM WHICH OBSTRUCTED THE VISIBILITY OF THE CONTACT. THE FAILURE RECURRED WHENEVER THE CONTACT WOULD DRIVE WITH HEADLIGHTS ACTIVATED. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHO WAS UNABLE TO PROVIDE ASSISTANCE. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 10,000. UPDATED 07/05/12*LJ HE CONSUMER STATED THE HEADL GHTS LIGHTS WERE AMBER IN COLOR AND DIDN'T ILLUMINATE PROPERLY WHILE DRIVING AT NIGHT. UPDATED 07/10/12.

l. January 5, 2013 THE HEADLIGHTS - LOW BEAM - ARE THE WORST. I'VE BEEN DRIVING FOR OVER 40 YEARS. WHEN I COMPLAINED TO THE DEALERSHIP (CRESTVIEW CADILLAC - WEST COVINA, CA) THAT THEY WERE SO BAD I BELIEVED IT IS DANGEROUS TO DRIVE AT NIGHT, THEY SAID THEY DIDN'T GET ANY COMPLAINTS FROM OTHER DRIVERS! I HAVE TO USE MY HIGH BEAMS ALL THE TIME TO BE SAFE. I HAVE HAD PASSENGERS TELL ME I DON'T HAVE MY HEADLAMPS ON!! IT'S A VERY REAL PROBLEM. I HAVE FOUND SEVERAL COMPLAINT PAGES ON LINE. I BELIEVE THEY SHOULD DO A RECALL ON THESE CARS AND FIX THE PROBLEM. IF I GO TO AFTER MARKET, I'M AFRAID ILL NULLIFY MY WARRANTY. PLEASE HELP! *TR

m. October 23, 2013 THE LOW BEAM HEADLIGHTS ARE VERY DIM. THEY DO NOT REACH OUT LIKE THEY SHOULD. DEALER TELLS ME THAT'S THE WAY THEY ARE, I DO NOT FEEL THEY ARE SAFE!!! *TR

n. November 7, 2014 TL* THE CONTACT OWNS A 2011 CADILLAC SRX. THE CONTACT STATED THAT MOISTURE WAS ACCUMULATING IN THE FRONT PASSENGER S SIDE HEADLIGHT LENS. AS A RESULT, THE LIGHT BECAME SO DIM THAT IT LOOKED AS IF ONLY ONE HEADLIGHT WAS ACTIVATED. THE VEHICLE WAS TAKEN TO THE DEALER. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE ON THE VEHICLE WAS 67,511.

o. February 2, 2017 I'VE HAD MY CAR FOR A LITTLE OVER A MONTH AND HONESTLY CANNOT SEE ANYTHING WITH THE HEADLIGHTS. WHEN I FLIP THEM OVER TO BRIGHTS, THEY ILLUMINATE THE ROADWAY PERFECTLY. ONCE I GO BACK TO NORMAL LIGHTING, NOTHING IS LIT. I'VE PULLED OVER A COUPLE OF TIMES TO MAKE SURE THE LIGHTS WERE ACTUALLY ON AND NOTHING WAS COVERING THE HEADLIGHTS. I AM VERY AFRAID THAT AN ACCIDENT WILL OCCUR BECAUSE I CAN'T SEE THE ROADWAY IN FRONT OF ME. PLEASE ADVISE IF THIS IS BEING LOOKED INTO. *TR

p. January 22, 2016 FRONT HEADLIGHT ASSEMBLIES ARE DEFECTIVE AND ALLOW CONDENSATION TO BUILD UP BEHIND LENS CAUSING HEADLIGHTS TO BE LESS EFFECTIVE AND EVENTUALLY SHORT OUT ELECTRICAL SYSTEM. THIS CONDITION HAS OCCURRED TWICE (ON BOTH FRONT PASSENGER AND DRIVERS SIDE) SINCE I PURCHASED THIS VEHICLE IN 2014, MOST RECENTLY WHILE DRIVING HOME ON THE HIGHWAY AT NIGHT NEARLY CAUSING AN ACCIDENT. THESE DEFECTIVE HEADLIGHT ASSEMBLIES ARE VERY DANGEROUS AND SHOULD BE ADDRESSED, VIA A RECALL, BY CADILLAC ASAP. AN INTERNET SEARCH ON THIS ISSUE REVEALED HUNDRED OF SIMILAR COMPLAINTS AND I SUSPECT CADILLAC IS WELL AWARE OF THIS DEFECTIVE PART.

## 2012 Cadillac SRX

q. December 22, 2014 TL* THE CONTACT OWNS A 2012 CADILLAC SRX. THE CONTACT STATED THAT WHILE DRIVING AT 35 MPH, THE LOW BEAM HEADLIGHTS FAILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. UPDATED 2/9/15*CN

r. February 13, 2015 TL* THE CONTACT OWNS A 2012 CADILLAC SRX. THE CONTACT STATED THAT THE PASSENGER SIDE HEADLIGHT RECEIVED EXCESSIVE AMOUNTS OF MOISTURE, CAUSING THEM TO SHORT CIRCUIT. THE DEALER STATED THAT THE ENTIRE LIGHTING ASSEMBLY AND SEALS NEEDED TO BE REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE

FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 52,485.

s. February 8, 2016 HEADLIGHTS HAVE WATER IN THEM CAUSING LOSS OF DRIVING VISABILITY AT NIGHT. DEALER REFUSES TO REPLACE THEM UNDER BUMPER TO BUMPER WARRANTY.

t. April 8, 2016 LOW BEAM HEADLIGHT IS VERY POOR. VERY DIFFICULT TO SEE AND IS VERY DANGEROUS.

u. December 26, 2016 LOW BEAM HEADLAMPS ARE DISFUNCTIONAL.   THEY ARE SO DIM, YOU CANNOT DRIVE THE VEHICLE AT NIGHT WITHOUT THE AIDE OF THE HIGH BEAM HEADLAMPS.

v. January 7, 2017 VEHICLE LOW BEAM/DAYTIME RUNNING LIGHTS ILLUMINATION DOES NOT ALLOW YOU TO SEE THE ROAD AT NIGHT MAKING IT A SEVERE SAFETY HAZARD.

**2013 Cadillac SRX**

w. April 13, 2016 TL* THE CONTACT OWNS A 2013 CADDILIAC SRX. THE CONTACT STATED THAT THE EXTERIOR HEADLAMPS HAD NOT EMITTED ENOUGH LIGHT WHILE DRIVING. THE CONTACT STATED THAT IT WAS DIFFICULT TO VIEW THE ROADS DURING NIGHT TIME DUE TO THE FAILURE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE HEADLIGHTS WERE REPLACED HOWEVE THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 40,000. THE VIN WAS NOT PROVIDED.

**2014 Cadillac SRX**

x. June 2, 2014 TL* THE CONTACT OWNS A 2014 CADILLAC SRX. THE CONTACT STATED THAT WHILE DRIVING AT NIGHT WITH THE LOW BEAM HEADLIGHTS ACTIVATED THE LIGHTS WERE VERY DIM MAKING AND CAUSING THE CONTACT DIFFICULTY IN SEEING PAST 50 FEET IN FRONT OF THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER HOWEVER, THE FAILURE COULD NOT BE DIAGNOSED. THE MANUFACTURER WAS NOT NOTIFIED OF THE ISSUE. THE VIN WAS NOT

AVAILABLE. THE FAILURE MILEAGE WAS 200.

y. November 27, 2016 EXTREMELY DIM LOW BEAM HEADLIGHTS. TOOK VEHICLE TO DEALER, THEY CONSULTED WITH GM. GM REPORTED THEY RECOMMENDED CHANGING THE LOW BEAMS, BUT IT MIGHT NOT CORRECT THE PROGRAM. HEADLIGHTS WERE REPLACE, DID NOT IMPROVE SITUATION. ATTEMPTED REPAIR AMOUNTED TO $255.00

z. February 7, 2017 THE LOW BEAMS ON OUR SRX ARE UNSAFE. WENT TO OUR DEALER AND WAS ADVISED THERE IS NO GM FIX AVAILABLE TO OUR CAR EXCEPT TO BUY BULBS FROM AFTER MARKET SOURCE AND THEY DID NOT RECOMMEND THAT SOLUTION. THE HEAD LIGHTS ON OUR CAR ARE UNSAFE. NOT ENOUGH LIGHT ON ROAD TO DRIVE SAFELY. THIS IS PARTICULARLY TRUE FOR US OLDER DRIVERS. SEEMS GM WOULD PUT GOOD HEADLIGHTS HIGH ON THEIR ENGINEERING REQUIREMENT LIST. THEY DID NOT DO SO WITH THE SRX. THIS MUST BE CORRECTED BEFORE SOMEONE IS HURTS OR KILLED.

aa. February 22, 2017 LOW BEAM HEADLIGHTS ARE SO DIM THAT THEY ARE AN ACCIDENT IN WAITING. THEY DO NOT PROJECT FAR ENOUGH TO AVOID "OVER DRIVING" THEM. DEALER SAYS THEY ARE ADJUSTED TO SPEC. PEDESTRIANS ARE AT RISK AS IS THE RISK OF HITTING WILDLIFE. IN AMBIENT LIGHT CANNOT TELL THE LIGHTS ARE EVEN ON! HAVE INSTALL. D BRIGHTER BULBS TO NO AVAIL. THIS PROBLEM IS INHERENT IN THE CADILLAC AND NEEDS TO BE ADDRESSED AT THE NHTSA. PROBLEM NOTED ALL OVER THE WEB.

57. Complaints posted by consumers in other public internet forums similarly demonstrate that the defect is widespread. The complaints also indicate Defendants' awareness of the Headlight Defect and how potentially dangerous the defective condition is for consumers. The following are additional examples of complaints relating to the prevalence of the Headlight

Defect (spelling and grammar mistakes remain as found in the original):

**CadillacForums.com: from Thread entitled "Head lamp condensation and water penetration"[5]**

a. (posted 12-31-13 at 11:01pm by Andy_TN): Ok folks. Here's a new one....My wife takes the SRX in today for the final warranty repair list - headlight condensation being one of the items. The service advisor admits that there is a big problem and GM has been replacing a LOT of SRX headlights. It's so prevalent that now, supposedly, the service advisors are supposed to convince the customer that the condensation is not unusual and that GM will NOT replace these anymore under warranty....unless it's really bad and you've got a foot of water in the headlight assembly. As my wife is explaining this to me, she and I both a bit shocked that the advisor would openly admit the problem exists AND 'sell out' GM by indicating their position on the issue. I guess he's trying to earn points by being honest! Anyways, the dealer was so busy that we weren't even able to leave the car today so an appointment was made for next week. And while he admitted that he hadn't yet seen how extensive the water is in our headlight, the feeling she got was that they really

---

[5] CadillacForums.com, *available at* http://www.cadillacforums.com/forums/cadillac-srx-second-generation-forum-2010/637417-fix-leaking-headlights-water-condensation-moisture-2.html (last visited Sep. 15, 2017).

are going to resist. Obviously, that's not going to be acceptable. I'll be sure and update....

b. (posted on 10-22-13 at 12:52pm by stevec5375): I heard back from my dealership on my right front headlight. They have had my SRX since Saturday morning and are still waiting on the headlight to come in. According to my service adviser, there are a lot of 2010 models with this problem and headlights for that MY are getting in short supply. So if you have the 2010 model you better hope yours fails before the warranty runs out. These puppies are expensive if paying out of pocket.

## II.   GM Had Exclusive Knowledge of the Headlight Defect

58. GM had superior and exclusive knowledge of the Headlight Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

59. Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their Class Vehicles, and since at least 2010, GM knew about the Headlight Defect through sources in its exclusive custody and control and thus not available to consumers, including pre-production design failure mode and analysis data, production design failure mode and analysis

data, pre-release testing data, early consumer complaints about the Headlight

Defect to GM and its agents, testing conducted in response to those

complaints, high failure rates and replacement part sales data, and other

aggregate data from Cadillac dealers.

60. In fact, in December of 2011, Defendant issued a Customer

Satisfaction Campaign ("CSC") that covered, inter alia, the 2010 Cadillac SRX

and identified a condition caused by the loss of electrical contact between the

halogen headlamp connectors and low beam headlamp bulbs that "could cause

the headlamp and/or daytime running lamp to work intermittently." CSC No.

10043330-5822 offered to replace the headlamp connectors and low beam

bulbs free of charge or to reimburse customers who previously had paid for

this repair, but did not identify the root cause of the malfunction or exclude the

accumulation of moisture and/or condensation in the housing.

61. In addition, GM has released several iterations of a TSB regarding an

inoperative low beam headlamp since May 2010 to address the same issue. In

May 2010, Defendant issued the initial TSB, Bulletin No. 10-08-42-001,

which applied to various vehicles, including the 2010 Cadillac SRX. The

bulletin alerted service technicians that "[s]ome customers may comment that

the low beam headlamp is inoperative." The recommended procedure included

replacing the bulb and verifying any discoloration or damage to the connector that would require the replacement of that part too. The TSB was re-issued on or around January 24, 2011, as Bulletin No. 10-08-42-001A, to add vehicles, including the SRX model year 2011, and update the relevant part number. Defendant subsequently updated the bulletin at regular intervals, releasing Bulletin No. 10- 08-42-001C in February 2012, Bulletin No. 10-08-42-001D in November 2014, and Bulletin No. 10-08-42-001E in May 2015, which bulletin included the SRX model years 2010-2013. The updated TSB explained the repair procedure in far greater detail, which included replacing the wiring harness and inspecting the connector for discoloration at the bulb interface. Like the CSC, the TSBs do not identify the root cause of the malfunction or exclude the accumulation of moisture and/or condensation in the housing.

62. The existence of the Headlight Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle, and only the CSC would have been disseminated to consumers (and only to purchasers and lessees as of December 2011), leaving them to discovery the problems identified in the TSBs on their own. Had Plaintiffs and other Class Members known that the Class Vehicles were equipped with defective headlights, they would not have purchased or leased the Class

Vehicles or would have paid less for them.

63. Consumers, like Plaintiffs, reasonably expect that a vehicle's headlights are safe, will function in a manner that will not pose a safety hazard, and are free from defects. Plaintiffs and Class Members further reasonably expect that GM will not sell or lease vehicles with known safety defects, such as the Headlight Defect, and will disclose any such defects to consumers when it learns of them. Plaintiffs and Class Members did not expect GM to fail to disclose the Headlight Defect to them and to continually deny the defect.

**III.   GM Has Actively Concealed the Headlight Defect**

64. While GM has been fully aware of the Headlight Defect in the Class Vehicles since 2010, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair and thereafter. Specifically, GM failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

- any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the headlights;

- that the Class Vehicles, including their headlights, were not in good in working order, were defective, and were not fit for their intended purposes; and

- that the Class Vehicles and their headlights were defective, despite the fact that GM learned of such defects through failure rates, customer complaints, as well as through other internal sources, as early as 2010.

65. In fact, GM has always emphasized the quality and reliability of the Class Vehicles and knows that consumers, including Plaintiffs and putative Class Members, rely upon such factors when purchasing or leasing Class Vehicles. For example, the Cadillac brochure "Introducing the All-New 2010 SRX Crossover," assures consumers that "[e]very detail of the SRX Crossover has been carefully considered."[6] The brochure for the 2011 SRX extols its virtues and assures consumers specifically that "passenger safety is a primary consideration throughout the engineering process...[and] the SRX was designed to help avoid collisions."[7] The 2012 SRX brochure states categorically that the vehicles' "Adaptive Forward Lighting...provide[s]

---

[6] Cadillac, "The All-New 2010 SRX Crossover," *available at* http://www.motorologist.com/wp-content/uploads/2010-Cadillac-SRXbrochure.pdf (last visited Sep. 15, 2017).

[7] Cadillac, "The 2011 SRX Crossover" *available at* http://www.cadillac.com/content/dam/Cadillac/Global/master/nscwebsite/en/hom e/Help_Center/Download_Brochure/01_images/Cadillac_2011_SRX.pdf (last visited Sep. 15, 2017).

optimal illumination closer or farther down the road."[8] And the "2015 SRX"

brochure asserts that the "available HD headlamps with Adaptive Forward

Lighting help guide you around curves and corners at night."[9]

66. Rather than repairing or replacing the defective headlights, GM issued

a series of technical service bulletins advising its technicians to make repairs

with the same defective parts. Furthermore, when consumers present the Class

Vehicles to an authorized GM dealer for repair of the headlights, rather than

repair the problem under warranty, GM dealers either inform consumers that

their vehicle headlights are functioning properly, conduct repairs that merely

mask the defect, or charge the customer for repairs.

67. GM failed to disclose the defect to owners and lessees of the Class

Vehicles, including Plaintiffs and members of the Class, despite the fact that

GM knew or should have known of the defect and its associated safety

hazards.

68. To date, the Headlight Defect remains unresolved.

69. On information and belief, GM has caused Plaintiffs and Class

---

[8] Cadillac, "The 2012 Cadillac SRX," *available at* http://www.motorologist.com/wp-content/uploads/2012-cadillac_srx_brochure.pdf (last visited Sep. 15, 2017).

[9] Cadillac, "2015 SRX," available at http://www.motorologist.com/wpcontent/uploads/2015_Cadillac-SRX-brochure.pdf (last visited Sep. 15, 2017).

Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' headlights and their component parts, despite GM's knowledge of the Headlight Defect.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

70. Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Headlight Defect and the omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and Class Members were deceived regarding the defective headlights and could not reasonably discover the defect or Defendant's deception with respect to it.

71. Plaintiffs and Class Members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or that the Class Vehicles were equipped with defective headlights or any corresponding safety hazard. As alleged herein, the existence of the Headlight Defect and the safety hazards it creates were material to Plaintiffs and the Class at all relevant times. Furthermore, Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Defendant was concealing the Headlight Defect during any applicable statutes of limitations.

72. At all times, Defendant is and was under a continuous duty to disclose

to Plaintiffs and the Class the true standard, quality, and grade of the Class

Vehicles and to disclose the Headlight Defect and associated safety hazards.

73. Defendant knowingly, actively, and affirmatively concealed the facts

alleged herein, including the unreasonable safety hazards resulting from the

alleged defects. Plaintiffs and Class Members reasonably relied on Defendant's

knowing, active, and affirmative concealment.

74. For these reasons, all applicable statutes of limitation have been tolled

based on the discovery rule and Defendant's fraudulent concealment, and

Defendant is estopped from relying on any statutes of limitations in defense of

this action.

## CLASS ACTION ALLEGATIONS

75. Plaintiffs bring this lawsuit as a class action on behalf of themselves

and all others similarly situated as members of the proposed Classes pursuant

to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies

the numerosity, commonality, typicality, adequacy, predominance, and

superiority requirements of those provisions.

76. The Class and Sub-Class are defined as:

**Nationwide Class:** All individuals in the United States who purchased or leased any 2010-2015 Cadillac SRX vehicle (the "Nationwide Class" or "Class").

**Florida Sub-Class:** All individuals in the United States who

purchased or leased, in the State of Florida, any 2010-2015 Cadillac SRX vehicle.

77. Excluded from the Class and Sub-Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

78. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

79. Typicality: Plaintiffs' claims are typical of the claims of the Class and Sub-Class in that Plaintiffs, like all Class Members, purchased or leased a

Class Vehicle designed, manufactured, and distributed by GM, and equipped with the defective headlights.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective headlights components.  Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class as a whole.

80. Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class and Sub-Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

> (a) Whether Class Vehicles suffer from defects relating to the headlights;
>
> (b) Whether the defects relating to the headlights constitute an unreasonable safety risk;
>
> (c) Whether Defendant knows about the defects relating to the headlights and, if so, how long Defendant has known of the defect;
>
> (d) Whether the defective nature of the headlights

constitutes a material fact;

(e)     Whether Defendant has a duty to disclose the defective nature of the headlights to Plaintiffs and Class Members;

(f)     Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(g)     Whether Defendant knew or reasonably should have known of the defects relating to the headlights before it sold and leased Class Vehicles to Class Members;

(h)     Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective headlight components;

(i)     Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective headlight components;

(j)     Whether Defendant breached the implied warranty
of merchantability pursuant to the Magnuson-Moss
Act;

(k)     Whether Defendant breached its express
warranties; and

(l)     Whether Defendant breached the implied
warranty of merchantability.

81. <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect
the interests of the Class Members. Plaintiffs have retained attorneys
experienced in the prosecution of class actions, including consumer and
product defect class actions, and Plaintiffs intend to prosecute this action
vigorously.

82. <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all
suffered and will continue to suffer harm and damages as a result of
Defendant's unlawful and wrongful conduct. A class action is superior to other
available methods for the fair and efficient adjudication of the controversy.
Absent a class action, most Class Members would likely find the cost of
litigating their claims prohibitively high and would therefore have no effective
remedy at law. Because of the relatively small size of the individual Class

Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, § 501.201, *et seq.*, Florida Statutes

83. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs 1 through 82 of this Complaint.

84. Plaintiffs brings this cause of action on behalf of themselves and on behalf of the members of the Florida Sub-Class.

85. Plaintiffs and Class Members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

86. Defendant manufactures Cadillac vehicles, which are "goods" within the meaning of FDUPTA.

87. FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

88. For the reasons discussed herein, Defendant violated and continues to violate FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq.* Defendant's omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment. By failing to disclose and concealing the defective nature of the headlights from Plaintiffs and prospective Class Members, Defendant violated FDUPTA, as it represented that the Class Vehicles and their headlights had characteristics and benefits that they do not have, and represented that the Class Vehicles and their headlights were of a particular standard, quality, or grade when they were of another.

89. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the

public.

90. Defendant knew that the Class Vehicles and their headlights suffered from an inherent defect and were not suitable for their intended use.

91. As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Headlight Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight components are substantially certain to fail before their expected useful life has run.

92. Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the headlights and/or the associated repair costs because:

    (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' headlights;

    (b)   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their headlights had a dangerous safety defect until it manifested; and

(c)     Defendant knew that Plaintiffs and Class Members

could not reasonably have been expected to learn of or

discover the safety defect.

93. In failing to disclose the defective nature of the headlights, Defendant

knowingly and intentionally concealed material facts and breached its duty not

to do so.

94. The facts Defendant concealed from or failed to disclose to Plaintiffs

and Class Members are material in that a reasonable consumer would have

considered them to be important in deciding whether to purchase or lease the

Class Vehicles or pay less. Had Plaintiffs and Class Members known that the

Class Vehicles' headlights were defective, they would not have purchased or

leased the Class Vehicles or would have paid less for them.

95. Plaintiffs and Class Members are reasonable consumers who do not

expect the headlights installed in their vehicles to exhibit problems such as the

extremely premature wear, and frequent replacement or repair, of the vehicle's

headlights. This is the reasonable and objective consumer expectation relating

to vehicle headlights.

96. As a result of Defendant's conduct, Plaintiffs and Class Members were

harmed and suffered actual damages in that, on information and belief, the

Class Vehicles experienced and will continue to experience problems such as the extremely premature wear, and frequent replacement or repair, of the vehicle's headlights.

97. As a direct and proximate result of Defendant's unfair or deceptive acts or practices alleged herein, Plaintiffs and Class Members suffered and will continue to suffer actual damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, Plaintiffs and the putative Class seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTIES

98. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs 1 through 82 of this Complaint.

99. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class and Florida Sub-Class.

100.    For each Class Vehicle, Defendant issued an express written warranty that covered the vehicle, including but not limited to the headlights. Defendant's express warranty of its vehicles was part of the basis of the parties' bargain.

41

101.    Defendant breached its express warranties by (1) offering for sale and selling defective vehicles that were defective and unsafe due to the Headlight Defect and that required repair or replacement during the warranty period, and (2) by refusing to honor the express warranty by repairing or replacing, free of charge, the headlights with headlights that were free of defects or by performing illusory repairs that replaced defective headlight parts with equally defective headlight parts without actually repairing the Headlight Defect or by falsely informing Class Members that their headlights were not defective.

102.    Plaintiffs were not required to notify GM of the breach and/or were not required to do so because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. Defendant was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the headlights or a component thereof, and through other internal sources.

103.    Defendant breach of its express warranties proximately caused the Nationwide Class and the Florida Sub-Class to suffer damages.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

104.    Plaintiffs incorporate by reference the allegations contained in

the preceding paragraphs 1 through 82 of this Complaint.

105.    Plaintiffs bring this cause of action against Defendant on behalf of themselves and on behalf of the members of the Nationwide Class and the Florida Sub-Class.

106.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

107.    Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

108.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their headlights were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their headlights would be fit for their intended use while the Class Vehicles were being operated.

109.    Contrary to the applicable implied warranties, the Class

Vehicles and their headlights at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are dangerous due to the Headlight Defect.

110.    The alleged Headlight Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

111.    As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Headlight Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight components are substantially certain to fail before their expected useful life has run.

112.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY UNDER THE
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2303 *et seq.*

113.    Plaintiffs incorporate by reference the allegations contained in the

preceding paragraphs 1 through 82 of this Complaint.

114.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, on behalf of the Florida Sub-Class, against Defendant.

115.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

116.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

117.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

118.    GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their headlights were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their headlights would be fit for their intended use while the Class Vehicles were being operated.

119.    Contrary to the applicable implied warranties, due to the Headlight Defect, the Class Vehicles were not fit for their ordinary and

intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.

120.    Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

121.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

122.    Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the headlights.

123.    As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained damages and other losses in  an amount to be determined at trial. Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

124.    As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred

damages.

## RELIEF REQUESTED

125.     Plaintiffs, on behalf of themselves, and all others similarly

situated, request the Court to enter judgment against Defendant, as follows:

(a)     An order certifying the proposed Class and Sub-Class,

designating Plaintiffs as named representative of the

Class, and designating the undersigned as Class Counsel;

(b)     A declaration that Defendant is financially responsible

for notifying all Class Members about the defective

nature of the headlights, including the need for periodic

maintenance;

(c)     An order enjoining Defendant from further deceptive

distribution, sales, and lease practices with respect to

Class Vehicles; compelling Defendant to issue a

voluntary recall for the Class Vehicles pursuant to 49

U.S.C. § 30118(a); compelling Defendant to remove,

repair, and/or replace the Class Vehicles' defective

headlight components with suitable alternative

product(s) that do not contain the defects alleged herein;

enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies provided pursuant to the Magnuson- Moss Warranty Act;

(f) A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiffs and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

48

(i)     Leave to amend the Complaint to conform to the

evidence produced at trial; and

(j)     Such other relief as may be appropriate under the

circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs

demand a trial by jury of any and all issues in this action so triable.

Dated:  October 13, 2017          */s/ Jonathan Z. DeSantis*
**BERGER & MONTAGUE, P.C.**
Russell D. Paul
Jeffrey L. Osterwise
Jonathan Z. DeSantis (Bar # 112446)
1622 Locust Street
Philadelphia, PA  19103-6305
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
rpaul@bm.net
josterwise@bm.net
jdesantis@bm.net

Attorneys for Plaintiffs and the Class

KAl._7826682